```
UNITED STATES DISTRICT COURT            (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
NADIA TARAZI and MICRONUTRIENT      : 13 Civ. 1024 (LAK) (JCF)
SOLUTIONS, INC.,
                                    :
                                         MEMORANDUM
            Plaintiffs,             :    AND  ORDER
                                    :
     - against -                    :
                                    :
TRUEHOPE INC., OPEN MIND            :
CONSULTING, INC., DANA RAY          :
STRINGAM, AUTUMN STRINGAM and       :
QUINTESSENTIAL BIOSCIENCES, LLC,    :
                                    :
            Defendants.             :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

Defendants Truehope Inc. ("Truehope"), Open Mind Consulting ("Open Mind"), Dana Ray and Autumn Stringam (together, "the Stringams"), and Quintessential Biosciences, LLC ("Q Sciences") move to stay this action in deference to an earlier-filed action in the Court of Queen's Bench of Alberta, Canada. For the reasons that follow, the defendants' motion is granted.

Background

This dispute centers on a series of agreements. The first, a Marketing and Distributorship Agreement, was executed on one side by Truehope, a Canadian corporation (through its CEO Anthony Stephan), and on the other side by the Stringams, who are Canadian citizens residing in Idaho; Ms. Stringam is Mr. Stephan's daughter. (Marketing and Distributorship Agreement dated July 5, 2012 ("Exclusivity Agreement"), attached as Exh. B to Amended Affidavit of Martin M. Adler dated June 7, 2013 ("Adler Aff."), at 1; First Amended Complaint ("Am. Compl."), ¶¶ 8, 10-11; Affidavit of Anthony

1

F. Stephan dated April 11, 2013 ("Stephan Aff."), attached as Exh.
B to Affidavit of David A. Kochman dated April 26, 2013 ("Kochman
Aff."), ¶ 8).  This agreement allowed the Stringams "an exclusive,
perpetual license to market, sell and distribute" in the United
States "private label versions"[1] of a "vitamin-mineral
supplement[]" (the "Product").  (Exclusivity Agreement at 1).  The
Exclusivity Agreement is governed by the laws of the Canadian
province of Alberta, which is where Truehope is located and
incorporated.  (Exclusivity Agreement at 1).

A few weeks later, Open Mind, a  corporation of which the
Stringams are officers and shareholders, Mr. Stringam, and
plaintiff Micronutrient Solutions, Inc. ("MSI"), a Delaware
corporation of which plaintiff Nadia Tarazi is Chief Executive
Officer and a shareholder, entered into a Joint Venture Agreement,
which assigned the Exclusivity Agreement to the Joint Venture.
(Am. Compl., ¶¶ 6-7, 9-11; Memo Agreement between Micronutrient
Solutions and Open Mind Consulting dated Aug. 17, 2012 ("Joint
Venture Agreement"), attached as part of Exh. C to Adler Aff.,
Annex A at 2 & Annex C).  The Joint Venture Agreement is governed
by the laws of New York, which is where MSI has its principal place
of business.  (Am. Compl., ¶ 7; Joint Venture Agreement, Annex A at
5).

Thereafter, Truehope and Q Sciences executed an agreement

---

[1] According to the plaintiffs, a "private label product is a
product manufactured by one company to be sold under another
company's brand."  (Affidavit of Nadia Tarazi dated March 3, 2013
("Tarazi Aff."), attached as part of Exh. G to Kochman Aff., ¶ 16).

allowing Q Sciences to market "branded products" in the United States "through its sales network of independent business owners" (the "Q Sciences Agreement"). (Stephan Aff., ¶ 21; Am. Compl., ¶ 36-37 (emphasis omitted)).

On January 29, 2013, Truehope filed a Statement of Claim in the Court of Queen's Bench of Alberta against the Stringams, Open Mind, MSI, and Ms. Tarazi. (Statement of Claim dated Jan. 29, 2013 ("Statement of Claim"), attached as Exh. E to Kochman Aff.). According to the Statement of Claim, "it was an express term of the [Exclusivity] Agreement" that the Stringams would not assign that agreement without Truehope's permission. (Statement of Claim, ¶ 7). Because Truehope allegedly did not consent to any assignment, MSI's and Ms. Tarazi's advertising and promotion under the Joint Venture Agreement of "branded products" -- that is, products "using the trade name EMPower Plus or the trade name Truehope" -- breached the Exclusivity Agreement. (Statement of Claim, ¶¶ 8-12). In addition, the Statement of Claim alleges that the Stringams, Ms. Tarazi, Open Mind, and MSI "are utilizing [Truehope's] trademarks in a fashion as to damage the reputation of and the sales of the branded product and the trademarks" without authorization. (Statement of Claim, ¶ 13). Truehope seeks (1) a declaration that the Stringams breached the Exclusivity Agreement, allowing it to be rescinded; (2) a declaration that the assignment of the Exclusivity Agreement "purportedly made . . . to Open Mind Consulting Inc., Micronutrient Solutions Inc., and Nadia Tarazi is null and void"; (3) a declaration that Ms. Tarazi and MSI have infringed Truehope's

3

trademarks and an injunction forbidding them from using the trademarks; and (4) damages, costs, and prejudgment interest. (Statement of Claim, ¶ 14).   Ms. Tarazi and MSI have filed an application in the Canadian court to dismiss the claim, arguing, among other things, that the action does not have a "real and substantial connection" to the Province of Alberta. (Application by the Defendants, Nadia Tarazi and Micronutrient Solutions Inc. dated March 11, 2013 ("App. to Dismiss"), ¶ 8).

The plaintiffs here -- Ms. Tarazi and MSI -- filed this action on February 14, 2013. For their part, they allege that Truehope breached the Exclusivity Agreement by entering into the Q Sciences Agreement and by refusing to continue to supply the Product to MSI or to the Stringams. (Am. Compl., ¶¶ 3, 36, 39, 57-60). In addition, the plaintiffs assert that Open Mind and the Stringams breached the Joint Venture Agreement by "sign[ing] up to become [independent business owners] to sell" Q Science's version of the Product. (Am. Compl., ¶¶ 4, 41, 100-103). These purported breaches were allegedly accomplished with the knowledge of Q Sciences. (Am. Compl., ¶¶ 37, 42, 45). The plaintiffs allege, in addition to the breaches of contract and certain other claims, (1) that Open Mind and the Stringams breached the fiduciary duty to the plaintiffs imposed upon them by the Joint Venture Agreement (Am. Compl., ¶¶ 68-70); (2) that Q Sciences and Truehope aided and abetted this breach (Am. Compl. ¶¶ 75-78); and (3) that Q Sciences tortiously interfered with MSI's contractual rights (Am. Compl., ¶¶ 81-85).

The defendants have requested that this action be stayed, "pending the Canadian court's resolution of [] fundamental issues underlying [the] [p]laintiffs' claims against [the defendants] in this action." (Defendant Truehope Inc.'s Memorandum of Law in Support of Its Motion to Stay and to Enlarge Time to Respond to Plaintiffs' Complaint ("Truehope Memo."), at 1; Memorandum of Law of Defendant Quintessential Biosciences, LLC d/b/a Q Sciences in Support of Its Motion to Stay and Enlarge Time to Respond to Plaintiffs' Complaint ("Q Sciences Memo."), at 1; Defendant Open Mind Consulting's Notice of Motion to Stay and Enlarge Time to Respond to Plaintiffs' Complaint at 1-2; Memorandum Endorsement dated April 30, 2013). More specifically, they argue that, in order for the plaintiffs to succeed on their claims here, "it must <u>first</u> be established that . . . [the Stringams] received certain rights from Truehope and that [the] [p]laintiffs, in turn received a valid assignment of those rights from the Stringams," which are issues raised in the Canadian action. (Truehope Memo. at 1; Q Sciences Memo. at 2). In the alternative, Q Sciences suggests that the action be stayed until the Canadian court resolves the motion to dismiss that the plaintiffs in this case have filed in the Canadian action. (Reply Memorandum of Law of Defendant Quintessential Biosciences, LLC d/b/a Q Sciences in Further Support of its Motion to Stay and to Enlarge Time to Respond to Plaintiffs' Complaint ("Q Sciences Reply"), at 2; App. to Dismiss).

<u>Discussion</u>

A court may "dismiss or stay an action based on the pendency

of a related proceeding in a foreign jurisdiction," Ole Media Management, L.P. v. EMI April Music, Inc., No. 12 Civ. 7249, 2013 WL 2531277, at *2 (S.D.N.Y. June 10, 2013) (collecting cases including Landis v. North American Co., 299 U.S. 248, 254 (1936)), based on principles of international comity -- "'the proper respect for litigation in and the courts of a sovereign nation, fairness to litigants, and judicial efficiency,'" Id. (quoting Royal and Sun Alliance Insurance Co. of Canada v. Century International Arms, Inc., 466 F.3d 88, 94 (2d Cir. 2006)).  However, concerns of comity must be balanced against the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." Colorado River Water Conservation District v. United States, 424 U.S. 800, 817 (1976).  Thus, in evaluating whether to defer to a foreign proceeding, "[t]he task of a district court . . . is not to articulate a justification for the exercise of jurisdiction, but rather to determine whether exceptional circumstances exist that justify the surrender of that jurisdiction."  Royal and Sun Alliance, 466 F.3d at 93 (citing Moses H. Cone Memorial Hospital v. Mercury Contruction Corp., 460 U.S. 1, 25-26 (1983), and Colorado River, 424 U.S. at 813).

The first step is to establish whether the proceedings are "parallel" -- that is, proceedings in which "substantially the same [parties are] litigating substantially the same issues" simultaneously in two fora.  Royal and Sun Alliance, 466 F.3d at 94; see also Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc., 180 F.3d 896, 898 (7th Cir. 1999) ("In assessing the propriety of

abstention, our first task is to determine whether the federal and foreign proceedings are in fact parallel."). A court may not defer based on "[t]he mere existence of parallel foreign proceedings." Royal and Sun Alliance, 466 F.3d at 92. Indeed, "parallel proceedings in the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other." Id. (internal brackets and quotation marks omitted). Rather, courts must examine "the 'totality of the circumstances' to determine whether the specific facts . . . are sufficiently exceptional to justify abstention." Id. at 94 (quoting Finova Capital, 180 F.3d at 900). Some of the circumstances to be considered (along with the degree of similarity between the cases) include

> the order in which the actions were filed, the adequacy of the alternate forum, the potential prejudice to either party, the convenience of the parties, the connection between the litigation and the United States, and the connection between the litigation and the foreign jurisdiction.

Royal and Sun Alliance, 466 F.3d at 94. However, both the Supreme Court and the Second Circuit have warned that courts should not rely "'on a mechanical checklist, but on a careful balancing of the important factors . . . as they apply in a given case, with the balance heavily weighted in favor of jurisdiction.'" Id. at 94 (alteration in original) (quoting Moses H. Cone, 460 U.S. at 16).

Although here the defendants have not asked that this action be dismissed, but only that it be stayed, the analysis outlined in Royal and Sun Alliance still applies. See, e.g., Ole Media, 2013

WL 2531277, at *2-6 (granting stay rather than dismissal based on Royal and Sun Alliance factors); LG Display Co. v. Obayashi Seikou Co., ___ F. Supp. 2d ___, ___, 2013 WL 314760, at *4 (D.D.C. 2013) (citing Royal and Sun Alliance factors in context of stay application); Klonis v. National Bank of Greece, N.A., 487 F. Supp. 2d 351, 355 (S.D.N.Y. 2006) ("[A] decision on a request for a stay is made by reference to the same standards as a motion to dismiss on [the] ground[] [that a foreign proceeding is pending]."). However, the factors may be weighted differently when a stay, rather than abstention, is considered. See, e.g., Royal and Sun Alliance, 466 F.3d at 96-97 (suggesting stay rather than dismissal might be merited); National Union Fire Insurance Co. of Pittsburgh, PA v. Kozeny, 115 F. Supp. 2d 1243, 1248 (D. Colo. 2000) (weighing adequacy of foreign forum in light of fact that court was staying, rather than dismissing, domestic action); Goldhammer v. Dunkin' Donuts, Inc., 59 F. Supp. 2d 248, 254 (D. Mass. 1999) (same).

A.   Parallel Proceedings

In order for proceedings to be deemed parallel, the parties and issues need not be identical; they must, however, be "substantially the same." Royal and Sun Alliance, 466 F.3d at 94; see also Finova Capital, 180 F.3d at 898; Ole Media, 2013 WL 2531277, at *3.

1.   Similarity of Parties

The parties to the Canadian litigation are the Stringams, Open Mind, MSI, and Ms. Tarazi.  The litigation here includes each of those parties, plus Q Sciences.  The defendants argue that the

8

addition of Q Sciences is immaterial, because Q Sciences is "[t]he only party to this action that is not also a party to the Canadian Action." (Truehope Memo. at 8).

Generally, parties in two cases are "substantially similar" for the purposes of this analysis when they are affiliates or have a similarly close relationship. See, e.g., Finova Capital, 180 F.3d at 898 (calling absence of two parties in domestic action "immaterial" because plaintiff in that action had assumed absent parties' rights under relevant contract); Ole Media, 2013 WL 2531277, at *3 (finding similarity when missing defendant in domestic action was affiliate of defendant that action); Arqus Media Ltd. v. Tradition Financial Services Inc., No. 09 Civ. 7966, 2009 WL 5125113, at *6 (S.D.N.Y. Dec. 29, 2009); Taub v. Marchesi Di Barolo S.p.A, No. 09 CV 599, 2009 WL 4910590, at *6 (E.D.N.Y. Dec. 10, 2009) ("[P]arties are 'similar' for the purposes of international comity when one party is a subsidiary of the other or one party has a substantial ownership interest in the other." (internal quotation marks omitted)); Credicom N.V. v. Colony Credicom L.P., No 99 Civ. 10486, 2000 WL 282968, at *2 (S.D.N.Y. March 16, 2000). Identifying such a relationship assuages concerns that a party's rights will be left unprotected in the event of a stay. Cf. Royal and Sun Alliance, 466 F.3d at 94-95, 97 (noting question of substantial similarity of parties was dependent on whether affiliated company in foreign action was responsible for obligations of defendant in domestic action); Ole Media, 2013 WL 2531277, at *3 ("The dissimilarity in parties to the two lawsuits,

9

if anything, supports staying th[e] [domestic action], because the defendants in this action form a subset of those in the Canadian action."); <u>Goldhammer</u>, 59 F. Supp. 2d at 253 (finding similarity of parties when individual plaintiff in domestic action who was missing from foreign action held two-thirds interest in corporate defendant in foreign action and, "thus, ha[d] substantially similar interests to those of [the corporate defendant]").

That is not a concern here, however.  Q Sciences' interest in the Canadian action, to the extent it has one, is aligned with Truehope's in that both entities seek a ruling that allows for the enforceability of the Q Sciences Agreement.  Nor will the interests of Ms. Tarazi and MSI in relation to Q Sciences be left unprotected, as the defendants have not asked that this case be dismissed, but merely stayed: Q Sciences, that is, remains a defendant in this case against whom the plaintiffs here may proceed, unless and until they are barred by the preclusive operation of a judgment from the Canadian court.  I therefore find that the parties in the foreign and domestic action are substantially similar.

     2.  <u>Similarity of Issues</u>

Likewise, the issues in the two cases are substantially similar.  <u>Ole Media</u> is instructive on this point.  In that case, Ole Media entered into two contracts with EMI April Music, Inc. and EMI Blackwood Music, Inc., under which the EMI entities would collect royalties on certain compositions owned by Ole Media.  <u>Ole Media</u>, 2013 WL 2531277, at *1.  Ole Media also entered into a

separate contract with an affiliate of the EMI entities called EMI
Entertainment World, Inc., transferring ownership of certain
musical compositions to Ole Media. Id. Disputes arose under the
agreements, and Ole Media sued EMI April Music and EMI Blackwood
Music in the Southern District of New York alleging breaches of the
administration agreement. Id. Ole Media also sued EMI
Entertainment World in Canada seeking a reformation of the contract
transferring ownership of the musical compositions. Id. The
defendants in the New York action sought a dismissal or stay of
that action in deference to the Canadian action. Id. at *2. The
Ole Media Court found that there was substantial similarity between
the cases at issue because "the determination of the issue
presented by the Canada action will resolve a major portion of the
claims" in the New York action. Ole Media, 2013 WL 2531277, at *4.
More specifically, the court found that the determination in the
foreign action as to which compositions Ole Media purchased would
"have significant bearing" on the dispute regarding the
administration agreements at issue in the New York action, because
it would clarify the assets that Ole Media owned, thus determining
the compositions on which the EMI entities owed it royalties. Id.
at *2, 4. Although the New York action included an issue not
present in the Canadian action, the imposition of a stay would
"not prevent the additional issue from being litigated before th[e]
[New York] [c]ourt. Instead, it w[ould] permit an underlying
dispute to be resolved first, one which is likely . . . to prove
either 'instructive on the ultimate resolution' of th[e] [New York]

11

action or largely dispositive." Id. at *4 (quoting Argus Media, 2009 WL 5125113, at *6) (internal citation and footnote omitted).

Here, if the Canadian court rules in favor of Truehope as to the meaning of the Exclusivity Agreement, this action will be resolved: the assignment to the Joint Venture will be void and MSI will have no rights under Exclusivity Agreement, completely undermining the claims here. If the Canadian court rules against Truehope on that issue, its ruling will be "instructive on the ultimate resolution" of this action because it will have determined the meaning of the Exclusivity Agreement under Alberta law. Argus Media, 2009 WL 5125113, at *6. Moreover, in the latter situation, the claims against Q Sciences would remain to be litigated here, as in Ole Media.

Because the parties and issues in the Canadian action and in this action are substantially similar, the actions are parallel.

B.   Other Royal and Sun Alliance Factors

1.   Connection with Canada and with the United States

As noted above, a determination that the cases are parallel "must be the beginning, not the end, of a district court's determination of whether [deference to a foreign action] is appropriate." Royal and Sun Alliance, 466 F.3d at 95. Exceptional circumstances meriting a stay cannot arise merely from "circumstances that routinely exist in connection with parallel litigation"; rather "additional circumstances must be present . . . that outweigh the district court's general obligation to exercise its jurisdiction." Id. Here, such "additional

12

circumstances" are provided by this litigation's primary connection to the Canadian forum -- or, more precisely, the Albertan forum.

It cannot be reasonably disputed (and, indeed, the plaintiffs do not appear to dispute) that the root question in both of these litigations is the construction of the Exclusivity Agreement. That agreement licenses rights derived from a company located in Alberta and was negotiated and executed, at least in part, in Alberta. (Exclusivity Agreement at 1; Stephan Aff., ¶¶ 10-19). Most importantly, the Exclusivity Agreement is governed by the laws of Alberta. (Exclusivity Agreement at 1). Because the document that lies at the foundation of these actions has a close connection with the foreign forum and is to be interpreted according to the laws of the foreign forum, it is appropriate to defer to that forum.

The plaintiffs argue that this litigation has a closer connection to the United States because a number of the other agreements at issue were negotiated and executed in this country and are governed by New York law. (Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion [to] Stay and to Enlarge Time to Respond to Plaintiffs' Complaint ("Pl. Memo.") at 11-12). But they ignore the fact that none of the rights and obligations under any of those agreements can be determined until the Exclusivity Agreement is construed. The plaintiffs also contend that United States intellectual property law is at issue in this action because "the Product possesses a trademark registered in the United States." (Pl. Memo. at 11). This is simply untrue, as no claim based on trademark law has been made here. (Am. Compl., ¶¶ 50-

13

103).  Thus, the litigation is more closely connected to Alberta than to the United States, and this factor weighs heavily in favor of a stay.

> 2.  Order of Filing

Courts "have traditionally accorded great weight to the first suit filed."  United Bank for Africa PLC v. Coker, No. 94 Civ. 0655, 2003 WL 22741575, at *3 (S.D.N.Y. Nov. 18, 2003).  However, the importance of this factor is reduced when the relevant actions were filed in close temporal proximity to one another and where the first-filed action has not "reached a more advanced stage" than the later action.  Taub, 2009 WL 4910590, at *6.

Here, the Canadian action was filed approximately two weeks prior to this action.  While that is a not an extended period of time, Ms. Tarazi and MSI have apparently already commenced discovery in the Canadian action "into the matters set forth in the Stephan Affidavit," which opposes the application to dismiss the Canadian action filed by Ms. Tarazi and MSI in the Canadian action and addresses the scope of the Exclusivity Agreement.  (Kochman Aff., ¶ 12; Stephan Aff.).  That discovery, even if it inquires merely into the formation of the Exclusivity Agreement to determine its connection to Canada, is likely to produce evidence as to its proper construction.  In this case, however, discovery has yet to begin.  Therefore, this factor weighs in favor of a stay.[2]

---

[2]  Ms. Tarazi's claims that she failed to file first only because Truehope and the Stringams lulled her into complacency are unavailing.  (Pl. Memo. at 16).  As Ms. Tarazi's affidavit makes clear, she was aware of Truehope's alleged breach of the Exclusivity Agreement in early December 2012 (Affidavit of Nadia

3.   Convenience

The plaintiffs contend that I should analyze convenience here in the same way I would if the defendants had moved to dismiss the case for forum non conveniens.   (Pl. Memo. at 12-13). Specifically, they cite cases indicating that a plaintiff's choice of forum should be given "great deference," especially when the plaintiff or the lawsuit have a close connection to the forum. (Pl. Memo. at 12).   However, "'abstention doctrine is of a distinct historical pedigree, and the traditional considerations behind dismissal for forum non conveniens differ markedly from those informing the decision to abstain.'" Royal and Sun Alliance, 466 F.3d at 95 (quoting Quackenbush v. Allstate Insurance Co., 517 U.S. 706, 722-23 (1996)).   In this case, deference to the plaintiffs' choice of forum must be weighed in light of the fact that Truehope filed its action in its forum of choice prior to the filing of this case.   In addition, concerns of international comity, which do not generally enter into a forum non conveniens analysis, must be taken into account. As such, the deference due the plaintiffs' choice to litigate in New York is considerably reduced.

The two fora involved here are Alberta and New York. Truehope, the plaintiff in the Canadian action, and Mr. Stephan, a non-party who is CEO of Truehope, are located in Alberta.   (Am.

_____

Tarazi dated June 3, 2013 ("Tarazi Aff."), ¶ 33), and the failure of settlement negotiations with Truehope was clear on January 4, 2012 (Tarazi Aff., ¶¶ 33-37).   Ms. Tarazi's counsel sent "cease and desist" letters to the defendants on January 14, 2013, and January 17, 2013.   (Tarazi Aff., ¶ 38).   Thus, she can hardly claim to have been surprised that litigation might ensue, as indeed it did when Truehope filed its action on January 29, 2013.

Compl., ¶ 8; Statement of Claim, ¶ 1; Stephan Aff., ¶ 3).  Ms. Tarazi and MSI are located in New York.  (Am. Compl., ¶¶ 6-7). None of the remaining parties or participants is located in either Alberta or New York: Open Mind and the Stringams are located in Idaho and Q Sciences is located in Utah.  (Am Compl., ¶¶ 9-12). Each party in the Canadian action is represented by Canadian counsel.  With the exception of the Stringams, who are proceeding pro se, each party in this action is represented by New York counsel.  Thus, at first blush, this factor seems to rest in equipoise, with the New York plaintiffs arguing for the convenience of this forum, the Canadian plaintiff arguing in favor of its forum, and the four remaining parties providing ballast on neither side because none has a close connection to either forum.

But the plaintiffs argue that "all of the necessary witnesses but one are United States domiciliaries." (Pl. Memo. at 13).  This is likely true.  However, the witnesses necessary for the determination of the meaning of the Exclusivity Agreement -- Mr. Stephan and the Stringams -- are Canadian citizens, one of whom lives in Alberta. (Stephan Aff., ¶¶ 3, 8).  Because that agreement is the font from which all the disputes flow, this factor weighs slightly in favor of a stay.

### 4.   Adequacy of Canadian Forum

Ms. Tarazi and MSI have challenged the jurisdiction of the Canadian court, arguing that "there is no real and substantial connection between the Province of Alberta and the [p]laintiff's claims in th[e] [a]ction." (App. to Dismiss, ¶ 8).  In addition,

they challenge the adequacy of service of process on MSI, apparently on the same ground, although that is not completely clear. (App. to Dismiss, ¶ 19); see Alberta Rules of Court, A. Reg. 124/2010, § 11.25 (allowing service of commencing document outside of Canada only if "a real and substantial connection exists between Alberta and the facts on which a claim in an action is based," court permits such service, and person served with commencing document is also served with copy of order permitting service).

While the unsettled question of the jurisdiction of the Canadian court over the subject matter of the action would counsel against dismissal, it does not have that effect when the remedy requested is merely a stay. Presumably, the Canadian court will expeditiously rule on the application to dismiss the case. If the case is dismissed because the Canadian court lacks jurisdiction, this case will go forward in this Court. If it does not dismiss the case, it will eventually rule on the validity of the relevant agreements, which, as discussed above, will be "instructive on the ultimate resolution" of this action. Argus Media, 2009 WL 5125113, at *6.

        5.  Potential Prejudice

Each side attempts to manufacture some prejudice that it will suffer if it does not prevail on this motion. Both sides fail.

The defendants argue that they will be prejudiced in the absence of a stay because of the "inconvenience and expense associated with parallel proceedings." (Truehope Memo. at 11). As

17

the plaintiffs note, this does not constitute prejudice justifying deference to a parallel foreign litigation.  (Pl. Memo. at 14); Kitaru Innovations Inc. v. Chandaria, 698 F. Supp. 2d 386, 391 (S.D.N.Y. 2006) (noting that burden of litigating simultaneously in two forums is not sufficient prejudice to weigh in favor of stay).

For their part, the plaintiffs claim that they will be prejudiced by a stay because (1) they "delayed filing this action in reliance on the Stringams' representations that they were seeking to defend the joint venture"; (2) the "[d]efendants' sole purpose in filing the Canadian action is to prevent this case being heard on the merits in a New York [c]ourt"; and (3) the request for a stay here "is but a veiled effort to obtain an outright dismissal." (Pl. Memo. at 14).  Neither the plaintiffs' alleged prior reliance on representations by the Stringams nor the defendants' alleged motive for seeking a stay is relevant to whether the plaintiffs will suffer prejudice by litigating in the Canadian court.  Cf., e.g., National Union Fire Insurance Co., 115 F. Supp. 2d at 1249 (less access to discovery and unavailability of jury trial in foreign court weighs against stay); Goldhammer, 59 F. Supp. 2d at 255 (less access to discovery in foreign forum weighs against stay).  Because no party has identified any prejudice that it will suffer if it does not prevail on this motion, this factor weighs neither in favor of nor against a stay.

C.   Additional Considerations

It should be clear that the interests of judicial economy will be best served by a stay, which will allow the Albertan court to

address the meaning of the Exclusivity Agreement under Alberta law
without duplication of effort by this Court and without the need
for expert testimony.  <u>See, e.g.</u>, <u>Biqio v. Coca-Cola Co.</u>, No. 97
Civ. 2858, 2010 WL 3377503, at *4 (S.D.N.Y. Aug. 23, 2010)
("Written or oral expert testimony accompanied by extracts from
various kinds of foreign legal materials remains the basic mode of
proving foreign law.").  Depending on the Canadian court's
construction of the agreement, this action will likely either be
fully resolved or the issues significantly clarified.  <u>See</u> <u>Ole
Media</u>, 2013 WL 2531277, at *4 ("[The plaintiff] gives short shrift
to the waste of judicial resources that would be expended without
a stay.  A stay of this action would advance the interest of
judicial economy by avoiding duplicative litigation of an identical
issue.").  Moreover, if the Canadian court grants the application
to dismiss the action, which is already being actively litigated,
the stay will dissolve and this action can proceed with little
delay.

The plaintiffs complain that "a stay here would be tantamount
to an outright dismissal." (Pl. Memo. at 15).  That is simply
untrue.  First, as noted immediately above, a grant of the
application to dismiss the Canadian action would allow this action
to proceed.  Moreover, only if the Canadian court adopts Truehope's
construction of the Exclusivity Agreement will the issues in this
case be resolved.  With any other outcome, there will still be
disputes to be decided here.

In addition, although I am ordering this action stayed, I have

a responsibility to see that the disputes involved are resolved efficiently. Therefore, I will order the parties to submit a joint status update every 60 days from the date of this Order. I will revisit the stay if it becomes necessary because, for example, there is a material change in the status of the litigation or because the Canadian court is not moving its case expeditiously toward resolution. See Ole Media, 2013 WL 2531277, at *6; Argus Media, 2009 WL 5125113, at *6-7 (ordering parties to advise court of status of foreign litigation and pledging to lift stay if foreign action not resolved expeditiously).

     D.   Extension of Time

In light of the stay, the defendants' time to answer or otherwise respond to the Amended Complaint is extended until 21 days after the stay is lifted.

Conclusion

For the foregoing reasons the motion to stay filed by Truehope Inc., in which all defendants joined (Docket no. 24), and the motions of Quintessential Biosciences, LLC (Docket no. 27), and Open Mind Consulting (Docket no. 50), are granted. The parties are directed to submit a joint status update to the Court 60 days from the date of this Order and every sixty days thereafter until the stay is lifted. In addition, the defendants' time to answer or otherwise respond to the Amended Complaint is extended until 21 days after the stay is lifted.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:      New York, New York
            July 24, 2013


Copies mailed this date:


Alan M. Sclar, Esq.
Martin M. Adler, Esq.
Sclar Adler LLP
140 Broadway, 46th Floor
New York, NY 10005

Alon Markowitz, Esq.
Markowitz Law Group, P.C.
10 E. 40th St., 33rd Floor
New York, NY 10016

J. Angus Edwards, Esq.
Jones Waldo Holbrook & McDonough, P.C.
170 S. Main St,. Suite 1500
Salt Lake City, UT 84101

David A. Kochman, Esq.
Reed Smith LLP
599 Lexington Ave.
New York, NY 10022

Dana Ray Stringam
Autumn Stringam
9042 Ridgepointe Lane
Nampa, ID 83686

Ariel Berschadsky, Esq.
Law Office of Ariel Berschadsky
199 State Street, 8th Floor
Brooklyn, NY 11201

21